**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CAROLINE CROLAND,      :
                            :
    Plaintiff,           :
                            :
    v.                  :     CIVIL ACTION NO.
                            :     1:15-CV-3303-RWS
STEPHENSON CAMILLE,    :
                            :
    Defendant.      :
                            :
                            :
                            :

## <u>ORDER</u>

This is a civil rights case.  It arises from Plaintiff Caroline Croland's

arrest  by Defendant Stephenson Camille—a police officer with the City of

Atlanta ("City")—on June 1, 2014, while Ms. Croland was volunteering for an

organization that provides food to the homeless in Woodruff Park.  Ms.

Croland was cited for violating a City ordinance that makes it unlawful to

attempt to incite a riot.  According to Ms. Croland, she was arrested without

probable cause and in retaliation for a previous incident when Ms. Croland

filmed Officer Camille as he detained and searched an unknown man.  Ms.

Croland sues Officer Camille under federal law for violations of her First and

Fourth Amendment rights and for related claims under Georgia law. The case comes before the Court now on Officer Camille's Motion for Summary Judgment [87] and Ms. Croland's Partial Motion for Summary Judgment [89]. After reviewing the record, the Court enters the following Order.

## Background

Ms. Croland volunteers her time to two organizations. (Pl.'s SOF, Dkt. [89-1] ¶ 1.) First, she is a long-standing member of the group "Food Not Bombs," which serves homeless people by preparing and distributing meals to them. (Id.) As a Food Not Bombs volunteer, Ms. Croland prepared and distributed meals to homeless men and women in Woodruff Park on most Sunday afternoons. Ms. Croland is also an active member of Cop Watch of East Atlanta ("Cop Watch"), which is a watchdog group focused on increasing police accountability and preventing police brutality by filming police officers in public. (Id.)

On May 15, 2014, Ms. Croland and other Cop Watch volunteers witnessed Officer Camille as he and another City police officer detained three African-American men in Woodruff Park. (Pl.'s Resp. To Def.'s SOF, Dkt.

AO 72A
(Rev.8/82)

[99] ¶ 25.)[1]  Ms. Croland filmed Officer Camille as he detained and searched

one of those men.  (Id.)

A week later, on June 1, 2014, Officer Camille returned to Woodruff

Park where Food Not Bombs volunteers were distributing meals to the

homeless.  (Pl.'s SOF, Dkt. [89-1] ¶ 3.)  For over an hour, Officer Camille

patrolled the park.  (Def.'s Resp. to Pl.'s SOF, Dkt. [100-1] ¶ 4.)  Much of

Officer Camille's activity during that time was captured on videos submitted

into evidence.  (Pre-Arrest Video, Dkt. [87-4]; Arrest Video, Dkt. [87-5];

Video attached to Aff. of Vincent Castillenti ("Castillenti Video"), Dkt. [85-1];

see also  Mclean Video, Dkt. [87-6].)  Those videos show the following:

Officer Camille stationed himself by the Woodruff Park pavilion, near a

table that the Food Not Bombs volunteers had set up to assemble and distribute

meals.  (Pre-Arrest Video, Dkt. [87-4] at 00:28.)  He repeatedly took a list of

radio codes, City ordinances, and state laws from his pocket, studied it, and

then returned it to his pocket.  (Id. at 2:10–3:15; Def.'s Resp. to Pl.'s SOF, Dkt.

[100-1] ¶ 4.)  A volunteer then asked Officer Camille to leave the park because

---

[1]  The parties disagree on whether the officers detained one or three men on
May 15.  However construed, this fact is not material to the Court's analysis.

3

there was no apparent reason for his presence and he was making those gathered for the meal feel "nervous" and "unsafe." (Pre-Arrest Video, Dkt. [87-4] at 3:15–5:40.) Officer Camille responded that he chose not to leave because he was in a public park. (Id. at 3:15–4:08, 4:54–4:58.) Rather than patrolling elsewhere, Officer Camille positioned himself closer to the Food Not Bombs table. (Id. at 4:27–4:45.) There, he propped himself against a post and tried largely to ignore persistent and sometimes insulting comments from volunteers, which went on for approximately 8 minutes. (Id. at 4:45, 5:00–13:05.) At one point, Officer Camille idly looked at his phone, and at another he offered his badge number. (Id. at 7:40–8:50, 11:50–12:00.)

Office Camille then moved away from the volunteers, but he remained in the vicinity of the Food Not Bombs table. (Id. at 13:05–26:22.) In all, Officer Camille surveilled the area for well over an hour. (Def.'s SOF, Dkt. [87-1] ¶ 6; Pl.'s SOF, Dkt. [89-1] ¶ 4.) During this time, several park ambassadors were in Woodruff Park and raised no concerns about the volunteers' actions or any other activities in the park. (Pl.'s SOF, Dkt. [89-1] ¶ 5.)

Around 4:30 p.m., Ms. Croland, standing near Officer Camille, began expressing that she was "so angry" that they were unable to share a meal with

people on Sunday "without state harassment." (Arrest Video, Dkt. [87-5] at 00:08–00:33; Def.'s SOF, Dkt. [87-1] ¶ 16.) Officer Camille turned his back to Ms. Croland, and as he began walking away, Ms. Croland repeatedly asked him, "Why?" in an increasingly louder tone. (Arrest Video, Dkt. [87-5] at 00:30–00:37.) Ms. Croland then shouted, "Answer me!" (Id. at 00:38.)

At that point, Officer Camille immediately turned around, approached Ms. Croland, and arrested her.[2] (Id. at 00:38–1:11.) He told Ms. Croland that she was being arrested for "disorderly conduct in the park." (Id. at 00:49.) Officer Camille charged Ms. Croland with violating City Ordinance § 106-81, which makes it unlawful to cause, provoke, or engage in a fight or riotous conduct. (Dkt. [87-10]; Dkt. [87-12] at 2.) Ms. Croland was later transported to the Atlanta City Detention Center and held over night before being released

---

[2] According to Officer Camille, he saw Ms. Croland "ball up her fists while yelling . . . ." (Camille Aff., Dkt. [87-3] ¶ 10.) Ms. Croland, however, says that she "absolutely did not ball up [her] fist." (Croland Aff., Dkt. 87-8 ¶ 19; see also Pl.'s Resp. to Def.'s SOF, Dkt. [99] ¶ 20.) The video evidence does not show Ms. Croland before the arrest. The Court notes, however, that Officer Camille appears to have his back to Ms. Croland while she is yelling, so it is unlikely that even if her fists were balled Officer Camille would have seen them. Nevertheless, based on the record before the Court, the Court cannot say that this fact is undisputed. As a result, in the Court's analysis, it will be construed in the light most favorable to the nonmoving party.

on bond.  (Def.'s SOF, Dkt. [87-1] ¶ 24.)

**Discussion**

In her Amended Complaint [22], Ms. Croland sets forth three counts

against Officer Camille: violation of her First and Fourth Amendment rights

under 42 U.S.C. § 1983 (Counts I and II); and battery, false arrest, false

imprisonment, and malicious prosecution under Georgia state law (Count III).[3]

Officer Camille moves for summary judgment on all three counts.  Plaintiff

moves for summary judgment only as to her claims under § 1983.  The Court

sets out the applicable legal standard before considering the parties' motions on

the merits.

## I.    Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  "The moving

party bears 'the initial responsibility of informing the . . . court of the basis for

its motion, and identifying those portions of the pleadings, depositions,

---

[3]  Counts I and II were initially alleged against the City as well.  However, on May 29, 2018, the parties jointly moved to dismiss the City as a defendant from the case, (Dkt. [83]), and the Court entered an order to that effect shortly thereafter, (Dkt. [84]).

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier

7

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

## II.  Section 1983 Claims

Ms. Croland asserts claims against Officer Camille under § 1983 for

violating her Fourth and First Amendment rights.  Section 1983 says:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  In order to prevail on a claim under § 1983, then, a plaintiff

must show two things: "(1) that the act or omission deprived plaintiff of a right,

privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).  Officer Camille does not dispute that he was acting under color of state law, so the Court's focus is solely on whether Officer Camille's conduct violated Ms. Croland's constitutional rights.

Ms. Croland alleges that Officer Camille deprived her of her rights under the First and Fourth Amendments.  Officer Camille, however, argues that Ms. Croland cannot prevail on her claims as a matter of law because they are barred by qualified immunity.

A.    Qualified Immunity Standard

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To claim qualified immunity, a defendant must first show he was

9

performing a discretionary function.  <u>Moreno v. Turner</u>, 572 F. App'x 852, 855

(11th Cir. 2014).  "Once discretionary authority is established, the burden then

shifts to the plaintiff to show that qualified immunity should not apply.

<u>Edwards v. Shanley</u>, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting <u>Lewis v.

City of W. Palm Beach</u>, 561 F.3d 1288, 1291 (11th Cir. 2009).  A plaintiff

demonstrates that qualified immunity does not apply by showing: "(1) the

defendant violated a constitutional right, and (2) the right was clearly

established at the time of the alleged violation."  <u>Moreno</u>, 572 F. App'x at 855.

Ms. Croland does not dispute that Officer Camille's actions were

discretionary, so the burden shifts to Ms. Croland to show that Officer Camille

is not entitled to qualified immunity.  Thus, there are two remaining inquiries:

whether the undisputed facts show a violation of Ms. Croland's constitutional

rights and, if so, whether those rights were clearly established at the time in

question.

The Court previously grappled with these questions at the motion to

dismiss stage.  And now, after the benefit of discovery–and particularly the

introduction of the video exhibits–the Court finds that the undisputed evidence

supports several allegations in the Amended Complaint critical to the Court's

10

denial of Officer Camille's prior invocation of the qualified immunity defense.

(See Order, Dkt. [53] at 24–25.)  But that evidence also casts doubt upon other allegations.  And so, the Court is unable to say, at this time, whether Officer Camille is or is not entitled to qualified immunity.

  B.    Constitutional Violation

 Ms. Croland argues Officer Camille violated her rights under the Fourth Amendment by arresting her without probable cause, and her rights under the First Amendment by arresting her for lawfully protesting police activity.

  A warrantless arrest in a public place violates the Fourth Amendment if there was no probable cause to arrest the suspect for a crime.  Jones v. Brown, 649 F. App'x 889, 890 (11th Cir. 2016).  It is similarly a violation of the First Amendment to arrest someone in retaliation for her protected speech.  Hartman v. Moore, 547 U.S. 250, 261 (2006).  But the converse of these principles is also true: "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."  Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010); see also Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998) ("Because we hold that the officers had arguable probable cause to arrest [the plaintiff] for disorderly

11

conduct, we must hold that the [defendant] officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims.").

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007). Yet, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown, 608 F.3d at 734. Under that standard, Officer Camille is shielded from liability if "reasonable officers in the same circumstances and possessing the same knowledge as [Officer Camille] could have believed that probable cause existed to arrest [Ms. Croland]." Id. (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)). Importantly though, whether an officer faced with a particular set of facts possesses probable cause or arguable probable cause to arrest someone for a crime depends on the elements of that particular offense. See Crosby v. Monroe Cty., 394 F.3d 1328, 1333 (11th Cir. 2004). And here, Officer Camille arrested Ms. Croland for violating Atlanta City Code § 106-81, a disorderly conduct ordinance. Under the relevant part of that ordinance, a person engages

in disorderly conduct if two elements are present: they must "[1] [c]ause, provoke or engage in any fight, brawl or riotous conduct [2] so as to endanger the life, limb, health or property of another."[4]  (Dkt. [87-12] at 2.)

As to the first element, it is undisputed that there was no fight or brawl, so Ms. Croland could not have caused, provoked, or engaged in either of them. Nor is there any evidence to suggest that Ms. Croland's actions caused or provoked others to take part in riotous conduct.  Thus, the Court must ask whether it was reasonable for Officer Camille to believe that Ms. Croland, herself, engaged in or was about to engage in riotous conduct or that her conduct would provoke others to do so.  The ordinance does not define "riotous conduct," and neither is there much authority specifically addressing Atlanta City Code § 106-81(3).  However, under O.C.G.A § 16-11-31, a person may be found guilty of inciting a riot by: "(1) engaging in conduct which urges, counsels, or advises others to riot; (2) with intent to riot; and (3) at a time and place and under circumstances which produce a clear and present danger of a riot." Powell v. State, 462 S.E.2d 447, 448 (Ga. Ct. App. 1995).  A riot occurs

_____

[4]  There is, in fact, a third element–that is, the person must engage in the proscribed conduct while "within the corporate limits of the city."  But of course, here, it is undisputed that Ms. Croland was in the City when she was arrested.

13

when "two or more persons" commit "an unlawful act of violence or any other act in a violent and tumultuous manner . . . ." Id. (quoting O.C.G.A. § 16-11-30(a)).[5]

Here, the evidence before the Court shows that Ms. Croland said that she was "so angry" that the volunteers were unable to distribute meals "without state harassment;" that she repeatedly asked Officer Camille, "Why?"; and that she shouted at Officer Camille from a considerable distance, "Answer me!" Other than that, it does not appear that Officer Camille had any interaction with Ms. Croland at all. Taking these facts in isolation, no reasonable officer in Officer Camille's position could have believed that probable cause existed to arrest Ms. Croland. However, whether an arrest is objectively reasonable turns, not only on the facts immediately preceding arrest, but on the totality of the circumstances. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).

---

[5] The Court further notes that City Ordinance § 106-81 references O.C.G.A. § 16-11-30. And at any rate, even if Officer Camille lacked arguable probable cause to arrest Ms. Croland under the ordinance, Officer Camille is still entitled to qualified immunity if he "had probable cause to arrest [Ms. Croland] for *any* offense." Durruthy v. Pastor, 351 F.3d 1080, 1089 n.6 (11th Cir. 2003) (citing Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., 956 F.2d 1112, 1119 n.4 (11th Cir.1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.")).

14

Before arresting Ms. Croland, Officer Camille patrolled Woodruff Park for well over an hour. During that time, he was confronted by Cop Watch volunteers, with whom Ms. Croland was associated. Those volunteers were persistent and sometimes insulting to Officer Camille. And although their comments were not particularly threatening, they certainly conveyed that Officer Camille was not welcome in the park and they wanted him to leave.

When Officer Camille arrested Ms. Croland, she was not alone. Instead, she was accompanied by the Cop Watch volunteers who previously expressed hostility toward Officer Camille's presence in the park. One of those volunteers encouraged Ms. Croland to "start a chant" so that people could understand that Officer Camille "is a piece of shit." Ms. Croland then shouted at Officer Camille as described above. And, according to Officer Camille, while doing so, Ms. Croland exhibited aggressive behavior by balling her hands into fists.

Under these facts, a reasonable officer in Officer Camille's position could have believed that Ms. Croland's behavior was likely to encourage others in the park to engage in tumultuous conduct or even violence (in other words, to riot). Powell, 462 S.E.2d at 448. A reasonable officer in such

15

circumstances–*i.e.*, outnumbered with no evidence to suggest that other officers were nearby–could also believe that if such conduct were to occur, it would be a threat to his or others' "life, limb, health or property," especially given that in his affidavit, Officer Camille says that he feared for his safety and that of others. (Aff. of Officer Camille, Dkt. [87-3] ¶ 11.) Accordingly, if these facts were undisputed, they would at least arguably satisfy both elements of the City's disorderly conduct ordinance.

However, the facts are not undisputed. Specifically, there are three issues of material fact that preclude the Court from finding that Officer Camille is entitled to qualified immunity. First, the parties dispute whether Ms. Croland actually balled her fists and if so, whether Officer Camille saw her do it. Second, there is a question of fact as to whether Officer Camille heard all of the comments made prior to Ms. Croland's arrest. And third, the parties disagree on the general demeanor of those in the park that day: while Ms. Croland paints a picture of people "casually playing drums, talking, and waiting on a Sunday meal," (Pl.'s Resp. to Def.'s MSJ, Dkt. [98] at 7), the tenor of the videos is much more contentious, and according to Officer Camille, Ms. Croland shouted at him in front of at least four Copwatch and

16

Food Not Bombs members, causing him to fear for his safety and the safety of others, (Def.'s Resp. to Pl.'s MSJ, Dkt. [100] at 13–14).

"When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury." Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005). In doing so, the Court finds that there are questions of material fact as to whether a reasonable officer could have believed that Ms. Croland engaged in disorderly conduct. Accordingly, Officer Camille is not entitled to qualified immunity at the summary judgment phase. See Wilkerson v. Seymour, No. 1:11-CV-4426-MHS, 2012 WL 12892433, at *5 (N.D. Ga. Oct. 17, 2012) (finding an issue of material fact as to whether arguable probable cause existed for officer to arrest plaintiff under a county ordinance that made it unlawful "[l] to act in a loud and boisterous, reckless, unruly or violent manner [2] for the purpose of insulting, degrading, or inciting another or a group of individuals [3] in a public place" because, on the one hand, the officer testified that the plaintiff's "loud and boisterous behavior was attracting the attention of others," which caused the officer "to be concerned for his safety," but on the other hand, the plaintiff testified that there was no one else in the area when she was

17

arrested"), aff'd in part, rev'd on other grounds, 736 F.3d 974 (11th Cir. 2013).

Nor, for that same reason, is Ms. Croland entitled to summary judgment on her

§ 1983 claims.  Accordingly, both parties' motions are **DENIED** as to Counts I

and II.

## II.    State Law Claims

Officer Camille argues he is entitled to official immunity from Ms.

Croland's state law claims.  Under Georgia law, state and local officials may be

liable for their discretionary acts only "if they act with actual malice or with

actual intent to cause injury."  See GA. CONST. art. I, § II, ¶ IX(d); Gilbert v.

Richardson, 452 S.E.2d 476, 483 (Ga. 1994).  Making arrests falls within the

discretionary function of law enforcement officers for purposes of official

immunity.  See Richardson v. Quitman Cty., 912 F. Supp. 2d 1354, 1381 (M.D.

Ga. 2012) (citing Selvy v. Morrison, 665 S.E.2d 401, 404 (Ga. Ct. App. 2008)).

Because Officer Camille was acting within his discretionary function when he

arrested Ms. Croland, Ms. Croland must show that Officer Camille acted with

actual malice or actual intent to cause injury in order to overcome official

immunity.  "[I]n the context of official immunity, actual malice means a

deliberate intention to do a wrongful act."  Adams v. Hazelwood, 520 S.E.2d

AO 72A
(Rev.8/82)

896, 898 (Ga. 1999).

Viewing the evidence in the light most favorable to Ms. Croland, there is evidence from which a jury could conclude that Officer Camille acted with actual malice when he made the arrest. One week after Ms. Croland filmed Officer Camille as he detained and searched an African American man, Officer Camille returned to Woodruff Park. While there, he stayed in the vicinity of the Food Not Bombs volunteers for a prolonged period of time before arresting Ms. Croland. And above, the Court explained that a reasonable jury could find under Ms. Croland's version of the facts, that Officer Camille had no reason to believe that Ms. Croland violated the law. A jury could, therefore, find that Officer Camille stayed in the park and ultimately arrested Ms. Croland to retaliate against her or the other volunteers for filming him, and that he lacked the prerequisites for doing so. This would constitute a deliberate intention to do wrong (or, malice), thus depriving Officer Camille of official immunity. Accordingly, Officer Camille's motion for summary judgment is **DENIED** as to Ms. Croland's state law claim.

### Conclusion

For the reasons described above, Officer Camille's Motion for Summary

Judgment [87] is **DENIED**, and Ms. Croland's Partial Motion for Summary

Judgment [89] is also **DENIED**.  The Parties shall file a proposed consolidated

pretrial order within 30 days of the entry of this Order.

      **SO ORDERED**, this 3rd day of January, 2019.

_____

**RICHARD W. STORY**
United States District Judge